UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| KARL E. JONES, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 1:15-CV-093 JD |
| CITY OF FORT WAYNE, et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Karl E. Jones alleges in this case that Jon Bonar, a Fort Wayne police officer, used excessive force when arresting him during a traffic stop. He sued Officer Bonar and the City of Fort Wayne, asserting a variety of claims under state and federal law. The defendants removed the case to federal court, and have now moved for summary judgment. For the following reasons, the Court grants the motion as to Mr. Jones' federal claims, and remands the remaining claims to state court for further proceedings.

## I. FACTUAL BACKGROUND

**A.  Motion to Strike**

Before addressing the facts, the Court notes that the defendants have filed a motion to strike certain materials Mr. Jones submitted in response to the motion for summary judgment. The defendants first move to strike a number of paragraphs in Mr. Jones' affidavit on grounds of relevance. However, matters of relevance are best considered in connection with the merits of the underlying motion. If the materials are not relevant, they will not create disputes of material facts, and will not affect the outcome of the motion,[1] Fed. R. Civ. P. 56(a); they need not be

---

[1] For example, Mr. Jones complains that the officers never read him his *Miranda* rights. However, *Miranda* warnings need only be provided prior to interrogating an individual who is in

stricken as well. The defendants also object to other materials on grounds of admissibility, arguing that the materials are speculative, constitute hearsay, or were not properly disclosed during discovery. Having reviewed those materials, the Court finds that they would not affect the outcome of the motion, so the Court declines to individually address the admissibility of those materials. Finally, the defendants object to a chronology submitted by Mr. Jones that transcribes and recounts what is depicted in a video that captured the incident. The chronology may be helpful for ease of reference, but to be clear, the Court relies on the video itself to determine what the video portrays. Fed. R. Evid. 1002. With that understanding, the Court denies the motion to strike.

**B.     Facts**

Officer Jon Bonar is a police officer for the City of Fort Wayne. Early in the morning on Sunday, April 7, 2013, he was on patrol working an OWI enforcement program, and he observed a pick-up truck perform a U-turn and then accelerate to a high rate of speed.[2] He called for assistance and caught up to the vehicle at a stop light. Once the light turned green, he activated his lights, and the vehicle, driven by Karl E. Jones, pulled over after the intersection. Two other Fort Wayne police officers, Officer James Rowland and Officer Andrew Irick, were also present

---

custody. *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007). Mr. Jones also complains that Officer Bonar did not tell him he was under arrest before removing him from the vehicle. But the officers repeatedly ordered Mr. Jones to exit the vehicle, and as discussed below, the lawfulness of those orders did not depend on whether Mr. Jones was going to be placed under arrest or whether the officers informed him of that first. *Smith v. Ball State Univ.*, 295 F.3d 763, 769 (7th Cir. 2002).

[2] Officer Bonar states in his affidavit that Mr. Jones was driving at 65 to 70 miles per hour in a 40-miles-per-hour zone. Mr. Jones states in his affidavit that he was not speeding, [DE 20-2], but he pled guilty to Reckless Driving, a Class B misdemeanor at the time, which applies to a driver who recklessly "drives at such an unreasonably high rate of speed" as to "endanger the safety or the property of others," Ind. Code § 9-21-52(a)(1)(A), so he cannot now deny that he was speeding. Moreover, he does not challenge the lawfulness of the stop or arrest, only the amount of force used.

by that time. Officer Irick parked alongside Officer Bonar, and his dash camera recorded the ensuing incident.

Officer Bonar approached the driver's side of the vehicle. When he arrived at the window, Officer Bonar smelled an odor of alcohol on Mr. Jones' breath, and observed that Mr. Jones had watery, blood-shot eyes. Officer Bonar asked if Mr. Jones had been drinking, and Mr. Jones turned his head away and said "no." Mr. Jones then gave his driver's license to Officer Bonar, who returned to his car. Officer Bonar retrieved his portable breath test and returned to Mr. Jones' window. He asked Mr. Jones to take the breath test, but Mr. Jones turned away and said, "I ain't takin' that." Officer Bonar then opened the driver's door and directed Mr. Jones to step out of the vehicle. Mr. Jones refused. Officer Bonar continued ordering Mr. Jones to exit the vehicle, but Mr. Jones did not comply. At that point, the truck was still running, and Mr. Jones' hands were on the wheel. Officer Rowland was standing behind Officer Bonar on the driver's side, and Officer Irick was standing outside the passenger door.

Officer Bonar reached for Mr. Jones' left arm to remove him from the vehicle, but Mr. Jones pulled away. Officer Bonar then reached in to turn off the vehicle as Officer Rowland unlocked the doors so that Officer Irick could enter the passenger door. The three officers then struggled to remove Mr. Jones from the vehicle. Officers Bonar and Rowland pulled on Mr. Jones from the driver's side and Officer Irick pushed him from the passenger's side, while Mr. Jones resisted them by gripping the wheel. After several seconds of struggling, the officers were able to get Mr. Jones out of the vehicle. He ended up face down on the road, with Officer Rowland laying partially across his back and Officer Bonar on his right side. Officer Bonar grabbed Mr. Jones' right hand and placed it behind his back, after which he stood up and struck his knee into Mr. Jones' back or side. Officer Irick then arrived and knelt on Mr. Jones' left side.

At that point, Officer Bonar moved near Mr. Jones head and crouched, placing his right knee on the back of Mr. Jones' neck, as the three officers worked to secure Mr. Jones' hands in handcuffs. Officer Bonar rocked back and forth at one point as he assisted with the handcuffs, and appeared to place much of his weight on Mr. Jones at times. It is not clear to what extent any force Officer Bonar applied to Mr. Jones at this point was meant to subdue and control him, or was merely incidental to Officer Bonar's attempt to get into position to secure Mr. Jones. Mr. Jones was speaking to the officers throughout this time, mostly asking the officers why he was being detained. Finally, Mr. Jones said, "Your knee's on the back of my neck, I have back problems," at which point Officer Bonar stood up and did not again touch Mr. Jones. The encounter lasted just over a minute from the time the officers began trying to remove Mr. Jones from the vehicle to the time Officer Bonar stood up.

The other officers continued working to secure Mr. Jones in handcuffs, and then placed him in a squad car. Mr. Jones was then transported to the police station, where he received a breath test a little over an hour after the stop was initiated. Mr. Jones states that he was told that he passed the test, but he does not dispute that it recorded his blood alcohol content as 0.06%. Mr. Jones ultimately pled guilty to reckless driving, a Class B misdemeanor.

## II. STANDARD OF REVIEW

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and

summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

### III. DISCUSSION

Mr. Jones asserts claims against Officer Bonar and the City of Fort Wayne arising out of these events. He asserts claims against Officer Bonar under federal law, alleging that Officer Bonar used excessive force against him. He also asserts claims against both Officer Bonar and the City of Fort Wayne under state law. The defendants have moved for summary judgment on all claims.

**A.     Federal Claims**

Mr. Jones first argues that Officer Bonar violated his rights under the U.S. Constitution by using excessive force against him. Specifically, he argues that Officer Bonar used excessive force by kneeing him in the back shortly after the officers had to forcibly extract him from the vehicle and while attempting to handcuff him. Mr. Jones also argues that Officer Bonar used excessive force by placing his knee on the back of Mr. Jones' neck to restrain him while the officers worked to secure Mr. Jones in handcuffs.

As an arrestee, the source of Mr. Jones' right to be free from excessive force is the Fourth Amendment: "*all* claims that law enforcement officers have used excessive force" during an arrest "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under that standard, the relevant inquiry is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "The amount of permissible force depends upon the specific situation, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002) (quoting *Graham*, 490 U.S. at 396). In conducting this analysis, courts "'remain cognizant of the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Abbott v. Sangamon Cty.*, 705 F.3d 706, 724 (7th Cir. 2013)). "As a result, we 'give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations.'" *Abbott*, 705 F.3d at 724–25 (7th Cir. 2013) (quoting *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009)).

When an officer asserts a defense of qualified immunity, a plaintiff faces an additional burden: they must not only demonstrate that excessive force was used, "they must further establish that it was objectively unreasonable for the officer to believe that the force was lawful—i.e., they must demonstrate that the right to be free from the particular use of force under the relevant circumstances was 'clearly established.'" *Id.* at 725 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[T]he burden is on the plaintiff to show that the right claimed to have been violated was clearly established." *Marshall v. Allen*, 984 F.2d 787, 797 (7th Cir. 1993). "A constitutional right is 'clearly established' for qualified-immunity purposes where 'the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal alterations omitted). "In other words, 'existing precedent must have placed the . . .

constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quoting *al-Kidd*, 563 U.S. at 741).

Courts have the discretion to resolve a qualified immunity defense on the ground that the right in question was not "clearly established," without deciding whether that right was actually violated. *Reichle*, 132 S. Ct. at 2093. The Court takes that approach here and resolves this claim on the second prong of the qualified immunity analysis, as the case law does not place beyond debate that the amount of force Officer Bonar used was excessive under the circumstances. "'It was of course clearly established that a police officer may not use excessive force in arresting an individual.'" *Becker v. Elfreich*, 821 F.3d 920, 928 (7th Cir. 2016) (quoting *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2011)). But "the right must be clearly established in a particularized sense, rather than in an abstract or general sense." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706. And "while the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Becker*, 821 F.3d at 928 (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). "To be clearly established the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In responding to the qualified immunity defense, Mr. Jones only argues generally that the rights at issue here are well-established, presumably noting that the right to be free from excessive force is well-established, but he does not cite any cases on point. Arguments at that

high a level of generality do not suffice for these purposes, though, and a plaintiff does not satisfy their burden in overcoming a defense of qualified immunity merely by invoking general principles. *Becker*, 821 F.3d at 928; *see Boyd v. Owen*, 481 F.3d 520, 526 (7th Cir. 2007) (granting qualified immunity where the plaintiff failed to cite cases that met this burden). Earlier in his brief, Mr. Jones cites two cases that bear some similarity to this one, but neither of them clearly establishes that the force at issue here was excessive. Mr. Jones cites *Williams v. Brooks*, 809 F.3d 936 (7th Cir. 2016), which involved an excessive force claim for an arrest that arose out of a traffic stop. There, the plaintiff failed to comply with multiple directions to exit his car, and after he got out of his car, he resisted the officer's efforts to place him in handcuffs. The plaintiff argued that the officer used excessive force by knocking him against the car several times while attempting to handcuff him, which the plaintiff said caused him injury. *Williams* undercuts Mr. Jones' argument if anything, though, as the court there found that the officers did not use excessive force. *Williams*, 809 F.3d at 944.

Mr. Jones also cites to *Abdullahi v. City of Chicago*, 423 F.3d 763 (7th Cir. 2005), where the Seventh Circuit denied qualified immunity to an officer who killed an arrestee by kneeling on his back while applying handcuffs. The officer there applied so much force that he crushed the individual's chest cavity, collapsed his lung, and inflicted severe trauma on his neck, causing his death within minutes. *Id.* at 771. Nothing of the sort happened here—Mr. Jones suffered bruises and scrapes, but does not claim to have suffered any lasting injury, much less a fatal one, or to have sought any medical care. And while the officer in *Abdullahi* used so much force that he essentially caused the individual to suffocate, Mr. Jones spoke to the officers throughout the time Officer Bonar had his knee on Mr. Jones' neck, showing he did not experience nearly that level of distress. *Abdullahi* further noted that kneeling on an individual to control them during an

8

arrest can be appropriate depending on the amount of force applied, *id.*, and thus would not have clearly established that the degree of force Officer Bonar used was excessive under the circumstances just described.

Even looking beyond the cases cited in Mr. Jones' brief, the unlawfulness of the force used here is not clearly established, even if it were found to be excessive. To begin with, the officers were entitled to forcibly remove Mr. Jones from his vehicle. "[P]olice officers are permitted to order a driver to exit his vehicle during the course of an investigatory stop," and an "officer who confronts a potentially intoxicated driver must have the discretion—without probable cause—to order the individual out of the vehicle." *Smith*, 295 F.3d at 769. Officer Bonar did that here, repeatedly instructing Mr. Jones to get out of the car, but Mr. Jones did not comply. At that point, the officers had reason to believe Mr. Jones was intoxicated, and he was seated in the driver's seat of a running vehicle, with his hands on the wheel, and refused to exit the vehicle. This presented a dangerous situation, and it could have escalated quickly if Mr. Jones had begun to drive, particularly while the officers were reaching inside the vehicle. *See id.* (noting that the driver's "unresponsiveness did not neutralize the safety threat, but rather exacerbated it by adding an element of unpredictability"). Thus, as in *Smith*, "the officers were justified in using force to remove him, particularly given the potential threat to public safety of an intoxicated driver in command of a running vehicle." *Id.* at 770.

When the three officers attempted to remove him from the vehicle, Mr. Jones resisted by gripping the steering wheel.[3] The video shows that the officers had to struggle for several seconds before finally getting Mr. Jones out of the car and onto the ground. Officer Rowland

---

[3] Mr. Jones states in his affidavit that he only gripped the wheel because he was afraid he would fall head-first toward the ground as he was being pulled by the officers. But his subjective intent is irrelevant and would not have been known to the officers.

ended up partially laying on top of Mr. Jones, who was facing down. Officer Bonar grabbed Mr. Jones' right hand, and after placing it behind Mr. Jones' back, stood up and used his knee to strike Mr. Jones in his back or side. This occurred about five seconds after Mr. Jones was extracted from the car and placed on the ground. Though Mr. Jones was laying on his stomach at that point, he had not yet been placed in handcuffs, and had not given any outward indication that he was no longer resisting.

Mr. Jones insists that he did not physically resist in any way after being placed on the ground, and that Officer Bonar used excessive force by using his knee to strike a non-resisting individual. Mr. Jones fails to acknowledge, though, that only moments before, he had physically resisted the officers' efforts to remove him from the car. Even if Mr. Jones had subjectively decided to cease resisting once he was removed from the car, and offered no further physical resistance, he gave no manifestation of surrender to the officers. This was a fluid situation, and the officers—who had just had to pry Mr. Jones out of the vehicle—would have had no way of knowing in that brief time period that Mr. Jones was not going to offer further resistance. He had not yet been placed in handcuffs or even had both hands placed behind his back by that time, either.

The Seventh Circuit has held in multiple previous cases that officers were entitled to use a degree of force in similar situations to gain compliance. In *Smith*, for example, an officer perceived the individual to be resisting after the officers had to forcibly remove him from his car, so the officer attempted to apply a "knee strike" to subdue the individual. *Smith*, 295 F.3d at 771. The Seventh Circuit held that this was not excessive force. *Id.* In *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009), the Seventh Circuit held that an officer did not use excessive force in allowing his German Shepherd to bite a suspect who had just ceased fleeing, as the officer would not have

known yet whether the surrender was genuine. The court noted that it is "well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders," but it emphasized that this "principle depends critically on the fact that the suspect is indeed subdued." *Id.* at 660 ("No law that we know of required [the officer] to take [the suspect's] apparent surrender at face value, a split second after [the suspect] stopped running."); *see also Abbott*, 705 F.3d at 728 ("And even assuming that Travis had ceased resisting prior to these last three tasings, Deputy Sweeney reasonably could have believed that Travis had not ceased resisting."); *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 487 (7th Cir. 2011) ("[C]ontrolling law would not have communicated to a reasonable officer the illegality of applying pepper spray to an arrestee who has ceased active, physical resistance for a couple of seconds but has not submitted to the officer's authority, has not been taken into custody and still arguably could pose a threat of flight or further resistance.").[4]

Thus, because Mr. Jones had actively resisted being removed from the vehicle, the general principle that officers may not use force against a non-resisting individual is not controlling here. Rather, the question is whether any reasonable officer would have known that Mr. Jones was subdued and posed no threat of further resistance at the time Officer Bonar struck him with his knee, and that this degree of force was not necessary to gain compliance. Mr. Jones has not shown that to be the case. Given the short time frame, and the latitude that qualified immunity gives to officers to exercise judgment in tense and evolving situations, the Court cannot find that it was clearly established that this use of force was excessive under these

---

[4] Some of the plaintiffs in these cases offered more resistance than did Mr. Jones, but the officers here also used a lower degree of force than in those cases.

circumstances, where Mr. Jones was not yet handcuffed and had given no outward indication that he was not going to offer further resistance.

Mr. Jones further argues that Officer Bonar used excessive force by placing his knee on Mr. Jones' neck while the officers attempted to place him in handcuffs. However, the law does not clearly establish that Officer Bonar used excessive force by kneeling on Mr. Jones in this manner to secure him while the officers were placing him in handcuffs. As discussed above, the Seventh Circuit noted in *Abdullahi* that kneeling on an individual to subdue him can be reasonable, depending on the amount of force used. 423 F.3d at 771. There, the court denied qualified immunity where the officer used so much force that he fatally injured the individual. Here, Mr. Jones experienced some bruises and scrapes, and later complained of neck and throat pain, but does not claim to have suffered any injury. In addition, Mr. Jones continuously spoke to the officers during this period—he repeatedly asked, "why am I being detained," or "why are you arresting me," which would not have signaled that he was in distress or was being injured. Finally, about forty seconds after Officer Bonar began kneeling on him, Mr. Jones said, "Your knee's on the back of my neck, I have back problems," at which point Officer Bonar stood up, even as the other officers were still trying to secure the handcuffs.[5] Under those circumstances, the law does not clearly establish that this degree of force was excessive. Therefore, the Court finds that Officer Bonar is entitled to qualified immunity as to Mr. Jones' claim of excessive force under the Fourth Amendment, so the Court grants the motion for summary judgment in that respect.

---

[5] The officers indicate that when the handcuffs were first applied, they were twisted, so they had to remove one of the cuffs and reaffix it.

Finally, Mr. Jones' complaint referenced the Eighth Amendment, which prohibits cruel and unusual punishment. However, the Eighth Amendment applies only to sentenced criminals. *Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009). As an arrestee, the source of Mr. Jones' right to be free of excessive force is the Fourth Amendment, as discussed above. Mr. Jones appropriately conceded to the dismissal of any Eighth Amendment claim in his response brief, so the Court grants summary judgment as to any claim under the Eighth Amendment.

**B.  State Claims**

The rest of Mr. Jones' claims arise under state law. He asserts claims against Officer Bonar for trespass, assault, battery, negligence, negligent care of a detained individual, and intentional and negligent infliction of physical and emotional distress. He also asserts that the City of Fort Wayne is liable for those claims under the doctrine of *respondeat superior*. Those claims each fall within the Court's supplemental jurisdiction, as this case was removable solely because of the presence of claims arising under federal law. Under § 1367, a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, 'when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).

Here, the Court finds that relinquishing supplemental jurisdiction is the appropriate course, given the presence of a number of claims arising under state law that are independent of

the federal claims. Though the parties indicate that the outcome of the federal claims could affect the outcome of certain of the state claims, other claims turn on questions of state law, such as the scope of Indiana's Tort Claims Act. Those are matters best left to the state courts to resolve. Accordingly, the Court relinquishes supplemental jurisdiction over the claims arising under state law and remands this case to state court for further proceedings.

## IV.  CONCLUSION

The defendants' motion to strike [DE 23] is DENIED. The defendant's motion for summary judgment [DE 17] is GRANTED in part, as to Mr. Jones' federal claims. The Court relinquishes jurisdiction over the supplemental state-law claims, and REMANDS this action to state court for further proceedings as to those claims.

SO ORDERED.

ENTERED:  March 21, 2017

                                                  /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court